UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

EDWARD L. SPAULDING, Executor of  )
the Estate of Judy Carol Spaulding, et al., )
)
    Plaintiffs, )   Civil Action No. 3: 11-18-DCR
)
V. )
)
MONICA JOHNSON TATE, et al., )   **MEMORANDUM OPINION**
)   **AND ORDER**
    Defendants, )
)

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of three motions for partial summary judgment filed by Defendant Monica Johnson Tate, individually doing business as Johnson Express (hereafter, the "defendant" or "Tate"). Tate seeks summary judgment regarding Plaintiff Edward Spaulding's claims for conscious pain and suffering [Record No. 23], punitive damages [Record No. 25], and lost wage and destruction of earnings [Record No. 26]. For the reasons explained below, the Court will grant the motions regarding punitive damages and lost wage and destruction of earnings but deny the motion concerning the claim for conscious pain and suffering.

**I.**

This action concerns an automobile accident involving Edward Spaulding and his wife and passenger Judy Spaulding, and Monica Johnson Tate. [Record No. 24, p. 1] The accident occurred in a reduced-speed (i.e., fifty-five miles per hour) construction zone near mile marker

-1-

28 on Interstate 64 in Shelby County, Kentucky. The police report indicates that the incident occurred on November 19, 2010, at approximately 12:48 p.m. [Record No. 23-7] Tate was operating a 2006 Freightliner semi tractor-trailer, traveling east in the left lane of the interstate highway. [*Id.*] Mr. Spaulding was driving a 1998 Cadillac Eldorado and traveling in the same direction as Tate, but in right lane. [*Id.*] Mrs. Spaulding was in the front passenger seat of the Cadillac. [*Id.*]

The cause of the collision is disputed. Tate claims that Mr. Spaulding lost control of his vehicle, veered toward her lane and collided with the right front side of her truck. [Record No. 24, p. 1] However, Mr. Spaulding contends that Tate abruptly crossed the center line and collided with his vehicle while it was in the right lane, forcing it off the road. [*Id.*, p. 2] It is undisputed that the Spauldings' car went over the embankment of the road and rolled, coming to rest in a ditch in an upside-down position. [*See Id.*; *see also* Record No. 34, p. 2.] It is also undisputed that Mr. and Mrs. Spaulding remained in the car until the Shelby County Emergency Medical Service ("EMS") arrived at 12:59 p.m. [Record No. 34, p. 2] EMS removed Mrs. Spaulding from the vehicle and transported her to Jewish Hospital in Shelbyville, Kentucky. [*Id.*] The hospital's emergency room noted her arrival time as 1:23 p.m. [Record No. 34-4, p. 1] Although efforts were made to treat Mrs. Spaulding, she was pronounced dead at 1:40 p.m. [Record No. 23-2]

Mr. Spaulding, personally and as executor of the estate of his wife, (hereafter, "Spaulding" or the "plaintiff") filed a complaint in the Shelby Circuit Court alleging negligence, wrongful death, pain and suffering, loss of consortium. Spaulding also requests punitive

damages. [Record No. 1-1, pp. 2-4] The action was removed to this Court on April 11, 2011, based on diversity jurisdiction and pursuant to 28 U.S.C. § 1446(a). [Record No. 1, p. 1] Tate filed motions for partial summary judgment on May 7, 8, and 9, 2012.

## II.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. Thus, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). Once this burden has been met, the party opposing summary judgment must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party cannot merely rely upon assertions in its pleadings; rather, that party must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. Further, "evidence submitted in opposition to a motion for summary judgment must be admissible." *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) (internal quotation marks

and alteration omitted). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

### A. Pain and Suffering

As executor of her estate, Mr. Spaulding seeks damages for Mrs. Spaulding's pain and suffering occurring after the accident but before her death. The defendant argues that because Mrs. Spaulding "was completely unconscious, unresponsive and entirely incapable of experiencing pain and suffering from the time of the accident until her death," she is entitled to summary judgment on this claim. [Record No. 23, p. 2] She further contends that the claim for loss of enjoyment of life should be dismissed as a matter of law because it is subsumed under the category of mental suffering and is not actionable for the same reason. [*Id.*]

The Supreme Court of Kentucky has held that damages for pain and suffering are not proper for a person who remained unconscious from the time of injury until the time of death. *Vitale v. Henchey*, 24 S.W.3d 651, 659 (Ky. 2000). "Damages for pain and suffering may be awarded, however, if the injured person was partly conscious, had intervals of consciousness, or was conscious for a short time before death." *Id.* (internal quotation marks omitted). The question, then, is whether there is a genuine issue of material fact regarding the consciousness of Mrs. Spaulding during the period between the accident and her death.

In Kentucky, even a brief period of consciousness may suffice to warrant the recovery of damages for pain and suffering. *See Alliant Hosps., Inc. v. Benham*, 105 S.W.3d 473, 477 (Ky. App. 2003) (upholding award of damages for pain and suffering where plaintiff, though

"obviously impaired," was partly conscious, experienced seizures and underwent uncomfortable treatments); *see also, e.g.*, *Estate of Presley v. CCS of Conway*, No. 3:03-CV-117-14, 2004 WL 1179448, at *3 (W.D. Ky. May 18, 2004) (denying summary judgment where "little evidence" was presented regarding the consciousness of decedent, because both sides would introduce expert testimony concerning the cause and manner of death at trial), and *Murphy ex rel. Reliford v. EPI Corp.*, No. 2002-CA-002173-MR, 2004 WL 405754, at *5 (Ky. App. Mar. 5, 2004) (upholding denial of defendant's summary judgment motion on pain and suffering issue for plaintiff in persistent vegetative state where plaintiff's mother testified that plaintiff cried during visits and where the plaintiff's physician testified that it was possible that she experienced some level of consciousness).

During the eleven minutes that passed before EMS arrived, Mr. and Mrs. Spaulding were together in the car. Mr. Spaulding testified during his deposition that Mrs. Spaulding "let out one real loud holler, and then I kept calling for her and she wouldn't answer. This is when the — we were upside down." [Record No. 34-2, p. 6] In his affidavit, Mr. Spaulding describes the scene after the car came to rest in the upside-down position:

> I heard [Mrs. Spaulding] scream and moan. Her scream and moan were sounds of her being in pain. I am certain that the sounds she made were those of her being in pain. I know this based on my [twenty-seven year marriage to her].

[Record No. 34-7 ¶ 3] He further states that,

> [a]fter hearing [Mrs. Spaulding] scream and moan in pain, after the car finally came to rest upside-down, I could not see her because it seemed like part of the seat between her an[d] me was pushed in the way and the car was filled with smoke, so I kept hollering for her, but could not hear her answer.

[*Id.* ¶ 4]

Tate relies heavily on the reports from after those eleven minutes to establish that Mrs. Spaulding was not conscious at any point following the accident. [Record No. 24, pp. 2-3] For example, the Shelby County EMS Report "advised that [Mrs. Spaulding] had arrested when they arrived on [the] scene." [Record No. 23-2] She was deemed "unresponsive, with non-reactive pupils, and pulseless." [*Id.*] When Mrs. Spaulding arrived at the hospital at 1:23 p.m. (thirty-five minutes after the accident), she was in "traumatic full arrest." [Record No. 23-3, p. 1] There were no sounds of breathing on her right side, she was unresponsive, she had no spontaneous respirations, and no heart sounds. [*Id.*, p. 2] Hospital records state that she "[r]egained [a] weak pulse intermittently." [*Id.*] Subsequent to the placement of a chest tube, Mrs. Spaulding "again lost [her] pulse, [advanced cardiac life support] resumed." There was "no return of pulse . . . [and] no heart sounds," that occurred before she was pronounced dead at 1:40 p.m. [*Id.*]

Tate argues that there is no evidence that Mrs. Spaulding experienced any pain or suffering following the accident, and that the case *Worldwide Equipment, Inc. v. Mullins,* 11 S.W.3d 50 (Ky. App. 1999) "is directly on point." [Record No. 24, p. 5] In *Mullins*, the Kentucky Court of Appeals determined that the lower court erred in not directing a verdict for the defendant on pain and suffering where "[t]here was no medical testimony presented respecting [the plaintiff's] physical condition which may have given rise to any potential pain and suffering" and where a passenger testified that the plaintiff "rendered neither response nor movement immediately following the accident." 11 S.W.3d at 61. Here, however, the plaintiff has presented evidence that Mrs. Spaulding did "moan in pain" after the accident. [Record No.

34-7 ¶ 3] Additionally, the plaintiff's expert, Robert F. Sexton, Jr., M.D., has "provided his professional opinion based upon a reasonable degree of medical probability that Judy Spaulding did have an interval of conscious pain and suffering and a probable sense of impending doom prior to lapsing into unresponsiveness." [Record No. 34, p. 8]

The defendant has provided her own theory on the issue of Mrs. Spaulding's consciousness. Relying on defense expert Mark Gladstein, M.D., Tate argues that Mrs. Spaulding "was physiologically dead at the time EMS arrived at the scene of the accident" and that the expert "think[s] it was almost an instantaneous death." [Record No. 23-7, p. 58] Dr. Gladstein has opined that, in all likelihood, Mrs. Spaulding's groan was an "agonal respiration," and that "patients frequently do that right before they die." [Record No. 23-7, p. 59]

Having considered the evidence presented, the defendant has not met her burden of showing that summary judgment on the issue of conscious pain and suffering is proper. Viewing all the facts and inferences drawn from the evidence in the light most favorable to Spaulding, the plaintiff has raised a genuine issue of material fact regarding whether Mrs. Spaulding "was partly conscious, had intervals of consciousness, or was conscious for a short time before death." *Vitale*, 24 S.W.3d at 659. A reasonable juror could find that the moan was not merely an "agonal respiration" but a "moan in pain" as the plaintiff contends, and could conclude that Mrs. Spaulding was conscious or partly conscious for a short period of time before she died. Moreover, the differing expert opinion evidence about when Mrs. Spaulding was physiologically dead "presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

Because there is a genuine issue of material fact on the conscious pain and suffering issue, the Court will also deny summary judgment regarding the sub-category of hedonic damages. In Kentucky, hedonic damages, or the loss of enjoyment of life, is not a distinct element of damages. *Adams v. Miller*, 908 S.W.2d 112, 116 (Ky. 1995) *overruled on other grounds by Giuliana v. Guiler*, 957 S.W.2d 318 (Ky. 1997). It is recoverable only to the extent that it is proven to be a part of the category of mental suffering, *i.e.* pain and suffering, and not as a separate category of loss. *Id.*

### B. Punitive Damages

The plaintiff also seeks to recover punitive damages "to punish [Tate's] wrongful conduct and to deter [her], and others, from similar conduct in the future." [*Id.*, p. 5] Tate moves for partial summary judgment on this claim because "there is no proof of gross negligence, or wanton or reckless disregard for the lives, safety or property of others." [Record No. 25-1, p. 2][1] Under Kentucky law, "'the well established common law standard for awarding punitive damages was [and is] gross negligence.'" *Kinney v. Butcher*, 131 S.W.3d 357, 358-59 (Ky. Ct. App. 2004)(alteration in original) (quoting *Williams v. Wilson*, 972 S.W.2d 260, 264 (Ky. 1998)). "While the courts of the Commonwealth have not always used precisely the same language in defining gross negligence, the prevailing understanding defines gross negligence as a 'wanton or reckless disregard for the safety of other persons.'" *Id.* at 359 (quoting *Phelps v.*

---

[1] Spaulding has asserted that Johnson Express is a "fictitious name" and that Tate should be held "personally responsible for the punitive damages that should be awarded against her." [Record No. 35, p. 14] Because the Court will grant the defendant's motion for partial summary judgment on this issue, the extent to which Johnson Express is a separate legal entity from Monica Johnson Tate and/or Monica R. Tate need not be addressed at this time.

*Louisville Water Co.*, 103 S.W.3d 46, 52 (Ky. 2003)). The jury need not find "the defendant to have acted with express malice; rather, it is possible that a certain course of conduct can be so outrageous that malice can be implied from the facts of the situation." *Id.*

To recover punitive damages under Kentucky law, the plaintiff bears the burden of proving by clear and convincing evidence that the defendant acted with gross negligence. KRS § 411.184(2); *Williams*, 972 S.W.2d at 264.[2] Where a party bears a higher burden of proof, "that party must meet the same burden in resisting the summary judgment motion." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (citing *Anderson*, 477 U.S. at 254-55).

Kentucky courts have illustrated a number of instances under which a driver/tortfeasor's actions rise to the level of "wanton or reckless disregard for safety of other persons." *Kinney*, 131 S.W.3d at 359. *See also Estate of Embry v. GEO Transp. of Ind., Inc.*, 478 F. Supp. 2d 914, 921 (E.D. Ky. 2007), and *Turner v. Werner Enter., Inc.*, 442 F. Supp. 2d 384, 386 (E.D. Ky. 2006). For example, in *Turner*, the court granted summary judgment for defendants, holding that a tractor-trailer driver who fell asleep while driving was not grossly negligent. 442 F. Supp. 2d at 386. Likewise, in *Embry*, the court concluded that an award of punitive damages was not

---

[2] KRS § 411.184 *et seq.* was declared unconstitutional, in part, in *Williams*. *See* 972 S.W.2d at 269. However, that holding was narrow, and "declared only that [the] 'malice' provision of the punitive damages statute was unconstitutional." *Derby Fabricating, LLC v. Packing Material Co..*, No. Civ. A. 3:03-CV-8035, 2005 U.S. Dist. LEXIS 28765, at *2 (W.D. Ky., Nov. 18, 2005). The statute defines malice as "either conduct which is specifically intended by the defendant to cause tangible or intangible injury to the plaintiff or conduct that is carried out by the defendant both with a flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in human death or bodily harm." KRS § 411.184(c). The Supreme Court of Kentucky found that the "subjective awareness" requirement elevated the standard for the availability of punitive damages above what it had been under the common law that existed at the time of the adoption of the Kentucky constitution. *See Kinney,* 131 S.W.3d at 358. Thus, the Court will apply the common law definition of malice in this case.

appropriate where a tractor-trailer driver choked on coffee while driving and crossed into oncoming traffic, striking a minivan. 478 F. Supp. 2d at 921. In *Kinney*, the court found that driving ten miles over the speed limit and passing a car in a no-passing zone did not warrant an instruction on punitive damages. *Kinney*, 131 S.W.3d at 359. However, in *Phelps*, the Supreme Court of Kentucky upheld an award of punitive damages where the jury was presented with eighteen instances of the defendant's violations of standards and additional misconduct and misrepresentation. 103 S.W.3d at 52.

As in *Turner,* this Court finds the Kentucky Court of Appeals' reasoning in *Kinney* particularly helpful. 442 F. Supp. 2d at 386. The *Kinney* court emphasized the importance of the distinction between ordinary negligence and gross negligence, explaining that

> [w]ere we to accept Kinney's argument that [going 10 miles over the speed limit and passing in a no-pass zone] amounts to wanton or reckless disregard for the safety of others, it would effectively eliminate the distinction between ordinary and gross negligence in the context of automobile accidents. Nearly all auto accidents are the result of negligent conduct, though few are sufficiently reckless as to amount to gross negligence, authorizing punitive damages. We are of the opinion that punitive damages should be reserved for truly gross negligence as seen in cases such as *Shortridge v. Rice*, *Stewart v. Estate of Cooper* [where the drivers were intoxicated] and *Phelps v. Louisville Water Company* [where there were eighteen instances of the defendant's misconduct].

131 S.W.3d at 359 (footnotes omitted).

In the present case, Spaulding points to eight alleged violations of state and federal law as evidence that Tate's behavior exceeded ordinary negligence. The first two alleged violations of state law relate to Tate's alleged attempt to change lanes in a prohibited area. [Record No. 35, p. 5] The third and sixth alleged violations deal with an obstruction of her mirrors, which the Court discusses *supra*. The other alleged violations relate generally to maintaining ordinary

care and maintenance of one's vehicle. *See* KRS § 289.290(1). Much of Spaulding's argument is premised on the allegation that Tate operates her tractor-trailer with impaired visibility from her right side because she places a cooler in the passenger seat and other objects on the floor. [Record No. 35, p. 4] Although not expressly stated, Spaulding implies that Tate had impaired visibility of her right-side mirrors on the day of the accident. This argument is based on photographs taken months after the accident by defense expert Vince Sayre during an inspection in Nashville, Tennessee.[3] [*See* Record No. 35-4, p. 4; Record No. 45-4, p. 25.] However, it is well-established that a state does not "have a legitimate concern in imposing punitive damages to punish a defendant for unlawful acts committed outside of the State's jurisdiction." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003). Assuming that Tate's act of having a cooler in the passenger seat is unlawful, the plaintiff has put forth no evidence that this behavior occurred either in Kentucky or on the day of the accident.[4] [*See* Record No. 35, p. 9; Record No. 25-1, p. 2.] Without evidence linking this act to conduct within Kentucky or to the day of the accident, Spaulding's argument regarding Tate's alleged restricted vision due to the cooler and bags is not properly considered within the context of punitive damages.

---

[3]Mr. Sayre clarified during his deposition that the cooler and bags were in Tate's truck only during an inspection in Tennessee, not in Kentucky. [Record No. 25-4, pp. 25-26]

[4]Using only this photograph, the plaintiff would have the Court infer that this action shows that Tate "unsafely restricts her field of view as she operates her tractor trailer" and that she had impaired visibility on the day of the accident. The defendant contends that this argument is misleading. [Record No. 35, p. 8] The dispute on this point has led to the plaintiff's "sur-response to defendant's motion for partial summary judgment as to claim of punitive damages." [Record No. 48] To the extent that this sur-response may be construed as a motion to strike, that motion will be denied.

And even if this activity occurred within Kentucky, the alleged violations of state and federal would not be sufficient to establish gross negligence. In general, the violation of a statute establishing rules of the road does not constitute gross negligence or willful or wanton conduct sufficient to support an award of punitive damages. Unlike the operative rule in the case of simple negligence, the fact of a violation ordinarily does not constitute gross negligence or other aggravated misconduct, or even evidence of such misconduct. *See*, *e.g. Horn v. Hancock,* 700 S.W. 2d 419, 421 (Ky. App. 1985) *overruled on other grounds by Cooper v. Fultz,* 812 S.W.2d 497 (Ky. 1991). In *Horn*, the Kentucky Court of Appeals held that failing to have a lead vehicle in front of a tractor-trailer carrying an oversized load as required by statute, did not, absent further evidence of reckless, wanton or willful misconduct, warrant an instruction on punitive damages. *Id.* In short, alleging traffic violations alone will not entitle a plaintiff to punitive damages.

Spaulding also asserts that Tate was attempting to "change lanes" despite a solid white line separating the two lanes. [Record No. 35, pp. 3, 8-10, 11] Conversely, Tate argues that she was not attempting to change lanes in the construction zone immediately before the accident occurred, and that she remained in the left lane because of an overhead traffic sign instructing all trucks to remain in the left lane. [Record No. 45-2, p. 27; Record No. 35, p. 5] Because this is a disputed fact, the Court will assume for the purposes of the present motion that Tate was attempting to change lanes unlawfully.

Spaulding cites several other facts in an attempt to meet the clear and convincing standard in this case. For example, Spaulding alleges that Tate "failed to obtain a drug and alcohol test

for herself after this fatality accident in violation of Title 49 of the Federal Motion Carrier Regulations under Part 392.303." [Record No. 35, p. 3]  However, there is no evidence that Tate was under the influence of alcohol or any other substance at the time of the accident.  Instead, the police report indicates that no alcohol was suspected based on the officer's observation of Tate.  [Record No. 25-1, p. 3]  Spaulding also claims that Tate's recorded statement to investigating deputies "blamed the wreck and thus death of Mrs. Spaulding on the grieving Mr. Spaulding," in an apparent attempt to show that Tate acted with malice.  [Record No. 5, p. 5]  This fact is also insufficient to warrant an instruction on punitive damages.  A court would be hard-pressed to find a vehicle accident in which the drivers did not blame each other for the incident.  This assertion does little to show any malice, express or implied, on the part of Tate.

Finally, Spaulding attempts to avoid summary judgment on this issue by claiming that "[f]acts as to what Ms. Tate's motive was on the highway before impact are disputed and in issue."  [Record No. 35, p. 13]  According to Spaulding, there are three possible "motives" for the accident that prohibit the entry of summary judgment:

> a) whether [Tate] attempted to simply break the law with an illegal lane change despite knowledge of the erratically operated vehicle to her right, or b) whether other and worse 'evil' was intended with intentionally running the Spaulding vehicle off the road, or c) whether she simply wantonly and recklessly pushed her way over to illegally change lanes in this instance — assuming Mr. Spaulding would move out of her way.

[*Id.*, p. 13]  Here, however, Spaulding has not offered any evidence that Tate either intentionally ran the Spaulding vehicle off the road or wantonly or recklessly attempted to change lanes, assuming Mr. Spaulding would move out of her way.  Simply put, Spaulding has presented no evidence of express malice, nor are there such "outrageous" facts that justify an inference of

-13-

malice in this case. *See Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 289 (Ky. 1985). As previously discussed, an illegal lane change – as a violation of the statutory rules of the road – does not entitle a plaintiff to punitive damages. *Horn*, 700 S.W. 2d at 421. This is not a case, as the plaintiff contends, where the jury would be presented with multiple instances of misconduct and could reasonably infer a wanton or reckless disregard for the safety of others. *See Phelps*, 103 S.W.3d at 52. Rather, viewing all facts in the light most favorable to Spaulding, this is a case of ordinary negligence, most similar to a tractor-trailer driver who falls asleep while driving, a driver going ten miles over the speed limit and who attempts to pass in a no-passing zone, or a tractor-trailer driver who chokes on coffee while driving and crosses into oncoming traffic. *See Turner*, 442 F. Supp. 2d at 386; *Embry*, 478 F. Supp. 2d at 921; and *Kinney*, 131 S.W.3d at 359, respectively. The plaintiff points out that none of these cases appeared to involve a wreck occurring in a construction zone. However, Spaulding has offered no authority indicating that an accident occurring in a construction zone alters the punitive damages analysis. [Record No. 35, p. 8]

Viewing the facts and inferences in the light most favorable to Spaulding, the plaintiff is not entitled to seek an award of punitive damages. To the extent that Johnson Express is a separate entity from Monica Tate, the Court finds that any claim for punitive damages against Johnson Express must also be dismissed as barred by KRS § 411.184(3). The evidence indicates that Tate's vehicle was not overloaded. Further, Tate was not speeding, was not under the influence of alcohol or any other substances, and possessed a valid commercial driver's license with all certifications. [Record No. 25-1, p. 6] At most, she attempted an improper and ill-

advised lane change while traveling at or under the speed limit in a construction zone. Allowing a claim of punitive damages to go forward on these facts "would effectively eliminate the distinction between ordinary and gross negligence in the context of automobile accidents." *Kinney*, 131 S.W.3d at 359. Thus, the Court will grant the defendant's motion for partial summary judgment on the punitive damage claim.

### C.     Lost Wage and Destruction of Earnings

Tate also moves for partial summary judgment dismissing any claim of lost wages and destruction of earnings asserted by Spaulding. Spaulding does not oppose this motion. [Record No. 36, p. 1] Having reviewed the parties' position on this issue, the Court will grant partial summary judgment in favor of the defendant on the lost wage and destruction of earnings claims.

### III.

Tate has not demonstrated that there is no genuine issue of material fact regarding the plaintiff's claim of conscious pain and suffering. However, she is entitled to summary judgment on the issue of punitive damages and the lost wage and earnings claim. Accordingly, it is hereby

**ORDERED** as follows:

1.     The defendant's motion for partial summary judgment regarding the plaintiff's claim for conscious pain and suffering [Record No. 23] is **DENIED**.

2.     The defendant's motion for partial summary judgment regarding the plaintiff's claim for punitive damages [Record No. 25] is **GRANTED**.

3.     The defendant's motion for partial summary judgment regarding lost wages and destruction of earnings [Record No. 26] is **GRANTED**.

4. To the extent that the plaintiff's sur-response to the defendant's motion for partial summary judgment regarding the claim for punitive damages [Record No. 48] is construed as a motion to strike, that motion is **DENIED**.

This 5th day of September, 2012.



Signed By:
*Danny C. Reeves* DCR
United States District Judge