UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| EDWARD L. SPAULDING, Executor of the Estate of Judy Carol Spaulding, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 3: 11-18-DCR |
| V. | ) ) | |
| MONICA JOHNSON TATE, etc., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

Defendant Monica Johnson Tate, individually and doing business as Johnson Express, has filed motions *in limine* and a supplemental motion *in limine*. [Record Nos. 29, 32] Plaintiffs Edward L. Spaulding and the Estate of Judy Spaulding (collectively, "Spaulding") have also filed motions *in limine* seeking to exclude testimony and various items of potential evidence. [Record Nos. 30, 31] For the reasons stated below, the Court will grant Tate's motions, in part. Spaulding's motions will be granted, in part.

**I.**

This action arises out of an accident involving Edward Spaulding, his wife and passenger, Judy Spaulding, and Monica Johnson Tate.[1] [Record No. 24, p. 1] Based on the injuries suffered by the Spauldings and the resulting death of Mrs. Spaulding, the plaintiffs sought to

---

[1] A more thorough discussion of the facts is contained in the Court's Memorandum Opinion and Order entered September 5, 2012. [Record No. 54]

recover monetary damages for wrongful death, pain and suffering, loss of consortium, punitive damages, and lost wages. [Record No. 1-1, pp. 2-4] State Farm Mutual Automobile Insurance Company ("State Farm") intervened in this matter on December 21, 2011, and asserted a subrogation claim for a $20,000 personal injury payment, and $6,861.14 in property damaged incurred as a result of the collision. [Record Nos. 14, 33] Thereafter, Spaulding filed a cross-claim against State Farm. [Record No. 53] On September 5, 2012, the Court granted Tate's motion for partial summary judgment regarding punitive damages and lost wages. [Record No. 54]

## II.

While the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to a district court's inherent authority to manage the course of trials. *Luce v. United States*, 469 U.S. 38, 41 (1984). Although a party can ask the Court to make an *in limine* ruling on evidentiary matters, it is within the Court's discretion to do so. In short, there is no right to an *in limine* ruling. *Huddleston v. United States*, 485 U.S. 681, 688–89 (1988). In fact, a ruling on a motion *in limine* is nothing more than a preliminary opinion which allows the parties to better formulate their trial strategy. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

### A.    Relevancy

The Federal Rules of Evidence set forth the general rule that relevant evidence is admissible, subject to certain exceptions, and irrelevant evidence is not admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it

would be without the evidence; and [] the fact is of consequence in determining the action." Fed. R. Evid. 401. In other words, relevancy can be determined by asking whether "the item of evidence tend[s] to prove the matter sought to be proved." Fed. R. Evid. 401 Advisory Committee's Note. Relevancy is an extremely broad concept, and both the Supreme Court and the Sixth Circuit have noted that the standard set forth in Rule 401 is a liberal one. *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir. 2006) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993); *Hildebrand v. Bd. of Trs. of Mich. State Univ.*, 607 F.2d 705, 713 n.15 (6th Cir. 1979)).

### B.      Rule 403

Even if evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. Evidence is not excluded merely because it is damaging or prejudicial to a party; instead, it must be *unfairly* prejudicial. *See United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993). Evidence that is prejudicial only in the sense that it portrays a party in a negative light is not unfairly prejudicial for purposes of Rule 403. *United States v. Chambers*, 441 F.3d 438, 456 (6th Cir. 2006) (citing *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996)). Moreover, to warrant exclusion, any danger of unfair prejudice posed by the evidence must *substantially* outweigh its probative value. Fed. R. Evid. 403. The Sixth Circuit has found this requirement significant. *See Koloda v. Gen Motors Corp.*, 716 F.2d 373, 377 (6th Cir. 1983). Rule 403 is not concerned with "the damage to [a party's] case that results from the legitimate

probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *United States v. Mendez-Ortiz,* 810 F.2d 76, 79 (6th Cir. 1986).

## III.

In her pretrial motions, Tate seeks to exclude the following evidence from being offered by the plaintiffs during trial: (i) the expert testimony of Detective Jason Rice and Michael Barnes; (ii) the police report from the accident; (iii) the expert opinions of Dr. Robert Sexton; (iv) the expert opinions of Dr. Nicole Everman; (v) the report of intervening plaintiff, State Farm; (vi) evidence regarding Judy Spaulding's "groan"; (vii) the Kentucky State Police Commercial Vehicle Enforcement Report; (viii) evidence regarding Tate's lack of drug and alcohol testing; and (ix) photographs of Tate taken at a subsequent truck inspection. [Record No. 29-1]

### A.    Expert Testimony

Tate seeks to exclude any testimony by Detective Jason Rice and Michael Barnes under Rule 403 of the Federal Rules of Evidence.[2]  [Record No. 29-1, p. 2]  Tate contends that Spaulding "should not be allowed to present expert evidence from two experts, in the same field, with the same opinions, as said evidence is cumulative and a waste of time within the meaning of Rule 403."  [*Id.*, p. 3]  Spaulding argues that the testimony from the experts is different: Detective Rice "will be offering testimony of the factual evidence observed and gathered in his official capacity at the scene of the accident immediately following the collision"; whereas, Michael Barnes "will rely on the factual evidence gathered by Detective Rice in addition to his

---

[2]  Tate also seeks to exclude or limit Detective Rice's testimony for other reasons.  [Record No. 29-1, p. 3]  These arguments are addressed *infra*.

-4-

own examination and review of other material and information in order to offer and express his expert opinion as to the issue of liability." [Record No. 43, p. 5]

Detective Rice was a responding officer to the accident and has since offered opinions regarding the cause of the accident. [Record No. 43, pp. 2-3] His opinion is that Tate was not able to maintain proper and safe control of her vehicle, that Tate was the cause of the accident, and that Mrs. Spaulding died as a result of her injuries sustained in the accident. [Record No. 29-2] He will also opine about the "point of impact," which he believes consisted of a single impact. [Record No. 29-1, p. 4] The testimony of Michael Barnes will be offered as an accident reconstruction expert. Spaulding contends that Mr. Barnes's opinions differ materially from those of Detective Rice because Mr. Barnes believes that there were multiple impacts between the two vehicles.

The probative value of these expert opinions is not substantially outweighed by the danger of needlessly presenting cumulative evidence. Because their opinions concern the point(s) of impact, the probative value of the testimony is potentially very high. Additionally, their opinions differ in that Mr. Barnes will opine that there were multiple impacts involved, while Detective Rice will testify that there was a single point of impact. [Record No. 29-1, p. 5] Thus, Tate's motion to exclude expert testimony of Detective Rice and Mr. Barnes as cumulative will be denied.

### B.  Detective Rice

Tate also seeks to exclude any testimony by Detective Rice beyond that offered in his official capacity as a law enforcement officer. Tate does not challenge Detective Rice's

qualifications to testify as an expert, but argues that "[a]ny expert opinion evidence or testimony by Detective Rice or other officers beyond the facts gathered in the course of their official capacity is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury under Rule 403."  [Record No. 29-1, p. 3]  Spaulding maintains that because Detective Rice's official duties involve reconstructing the accident and include assigning fault, his testimony should be allowed.  [Record No. 43, pp. 6-7]

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)  the testimony is based on sufficient facts or data;
> (c)  the testimony is the product of reliable principles and methods; and
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Courts in this circuit have found that the testimony of an investigating officer who is also a qualified accident reconstructionist is allowed under Rule 702.  *See Dortch v. Fowler*, 2007 U.S. Dist. LEXIS 41615 (W.D. Ky. June 6, 2007).  Additionally, such experts have been permitted to testify regarding the cause of the accident.  *See id.* (admitting the testimony of an officer who investigated the accident within his official duties as a police officer and was not retained as an expert).

Detective Rice was originally called to the scene of the accident in his official capacity as a detective with the Shelby County Sheriff's Department.  [Record No. 43, p. 6]  The

information and evidence he gathered at the scene was used to prepare the Kentucky Uniform Police Traffic Collision Report ("Police Report"). [*Id.*] However, Spaulding has since retained Rice as an expert and has paid Rice $100.00/hour for his work on the case outside of his official duties, and $250.00 for writing the expert report. [Record No. 32-2] Detective Rice's opinions are that Tate was unable to maintain proper and safe control of her vehicle and that her actions were the sole reason that her vehicle collided with Spauldings' vehicle. [Record No. 32-2] Tate argues that "[t]he role of law enforcement is *not* to determine fault in an accident and to place blame on a particular party in a subsequent civil action." [Record No. 29-1, p. 3] However, Spaulding contends that "providing opinion of fault based on the roadway evidence and other information gathered in an accident investigation are within the scope of official duties for Detective Rice." [Record No. 43, p. 7]

Detective Rice meets the standards set forth under Rule 702 of the Federal Rules of Evidence. Rice is employed with the Shelby County Sheriff's Department as an accident reconstructionist. [Record No. 43, p. 7] He has been a police officer for fifteen years, and his duties include investigating accidents that occur in Shelby County. [Record No. 29-2, p. 2] He obtained his certification in accident reconstruction from the Institute of Police Technology Training in North Florida in June of 2000. [*Id.*] He has investigated, as a reconstructionist, over 100 fatal accidents. [*Id.*] His opinions in this case were formed "based on the investigation that was conducted on the accident" including interviews with the drivers of both vehicles and independent witnesses, roadway evidence, and the inspection of each vehicle. [*Id.*] Assuming a proper foundation is established at trial, Rice qualifies as an expert due to his training and

qualifications in accident investigation, as well as his reliance on physical evidence observed from the scene.  Therefore, Rice may testify regarding the point of impact of the vehicles in the collision, as well as his investigation of the scene.

However, the Court will sustain the motion *in limine* to exclude testimony by Rice assigning fault to Tate and opining that Tate was driving in an out-of-control manner.  Detective Rice is not just an accident reconstruction expert; he is also the investigating officer of the accident.  After his duties as a police officer ended, he was retained by Spaulding, and he has been paid by Spaulding for his opinions and report outside of his official duties as a police officer.  As the Supreme Court of Kentucky has recognized, a trial court must carefully scrutinize the prejudice inherent in police officer testimony, "[b]ecause of the obvious impact on a jury, of the testimony of an unbiased, objective policeman . . . ." *Alexander v. Swearer*, 642 S.W.2d 896, 897 (Ky. 1982).

Detective Rice testified that it was normally not his job as a police officer to assign fault, and that the scope of law enforcement is generally limited to "fact-gathering."  He also avers that he has been paid outside of his "official duties" as a police officer.  [Record No. 29-3]  There is a substantial probability that the jury would be confused or misled by the distinction between Detective Rice's duties as an impartial police officer in investigating the accident, and his role in the trial as a paid witness.  The probative value of his opinions regarding fault are substantially outweighed by the danger of unfair prejudice and misleading the jury.  Therefore, the Court will grant Tate's motion regarding Rice's opinion of fault, including Rice's opinion

-8-

that Tate was driving in an out-of-control manner, and deny the motion regarding all other opinions of Detective Rice.

### C.    Expert Case Lists

Both parties have moved to exclude testimony from experts based on violations of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.  [Record Nos. 31, 32]  Spaulding moved to exclude expert testimony by defense expert Dr. Mark Gladstein for a failure to provide a case list.  In turn, Tate moved to exclude the testimony of Detective Rice for the same reason.

The Federal Rules of Civil Procedure require that a retained expert provide a written report containing, among other things, "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v). Under Rule 37(c)(1), a court may exclude a witness if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e) . . . , unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  As a general rule, "if the failure to comply with the required disclosure involves a material aspect of the expert's testimony, and if the opposing party can show prejudice in connection with the lack of disclosure, then the opinion of the expert should be excluded, in whole or in part, at trial." *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 503 (D. Md. 1997).

Spaulding asserts that Dr. Gladstein failed to disclose his expert case list in a timely manner.  [Record No. 31-1, p. 2]  Spaulding contends that this failure has denied him "access to material evidence that would . . . . show bias, or a lack of credibility to the jury as to his testimony."  [*Id.*, p. 3]  Tate responds that Dr. Gladstein disclosed his case list on June 4, 2012,

-9-

and that there has been ample time since then to gather any information about Dr. Gladstein's prior testimony.  [*See* Record No. 32-1, p. 1; *see also* Record No. 41-4.]  In addition, Tate "suggest[s] that *neither* expert's testimony be stricken simply for failing to produce a case list." [Record No. 41-1, p. 1 n.1]

It appears that both experts initially failed to comply with the case list requirement. Although Detective Rice has testified as a "retained expert" 15 to 20 times in his career, his report does not contain a list of all of the cases in which he has testified over the past four years.[3] Similarly, Dr. Gladstein's original disclosures did not contain a case list.  However, the June 4, 2012 disclosure listed Dr. Gladstein's participation in cases over the past four years, including case names, numbers, and dates.  [Record No. 41-4]  Because Dr. Gladstein supplemented his disclosure with a full case list, Spaulding's concern that he did not have crucial information for cross-examination is now moot.  Thus, the Court finds that Dr. Gladstein's original deficiency was harmless under Rule 37(c)(1).  Additionally, Tate does not assert any harm in Detective Rice's deficient disclosure; rather, she requests that neither experts' testimony be excluded.  The Court finds no harm with Detective Rice's failure to fully comply with Rule 26(a)(2)(B).  As a result, the Court will deny both parties' requests to exclude expert testimony for failure to provide case lists.

### D.    The Police Report

---

[3] Under his qualifications, Detective Rice states that "numerous depositions have been given in the 11 years as an accident reconstructionist.  The number of these depositions has not been kept by the investigator but would be at or around 30."  [Record No. 29-2, p. 2]  Additionally, Detective Rice states that two judges, in 53rd judicial-district circuit courts of Kentucky have identified him as an expert in the field of accident reconstruction.  [*Id.*]

Tate next moves to exclude the police report under Rules 801(c) and 802 of the Federal Rules of Evidence. [Record No. 29-1, p. 3; Record No. 34-1] The police report, prepared by Officer Rick Meadows, contains statements from the parties, as well as statements that the roadway evidence "was entirely in right lane where [Spaulding] was traveling. It indicates that [the Spauldings were] in their lane of travel when the collision occurred." [Record No. 34-1] The report also contains hearsay: "[t]he witness stated she did not see the collision between unit 1 and unit 2[;] she only saw unit 1 swerve toward the north away from unit 2[,] which was traveling in the right hand lane." [*Id.*] In addition, Tate asserts that diagrams are attached to the report that were prepared by Detective Rice; however, the Court has not been provided with any diagrams.[4] [*See id.; see also* Record No. 35-1.]

There is an exception to the hearsay rule for reports or records of public offices setting forth factual findings resulting from an investigation made pursuant to authority granted by law. Fed. R. Evid. 803(8)(A)(ii). The Sixth Circuit has explained that, to be admissible, the preparer of such a report must have firsthand knowledge of the matter asserted, which may be inferred from the circumstances. *Miller v. Field,* 35 F.3d 1088, 1091 (6th Cir. 1994). Additionally, the Court has an independent obligation to assess the trustworthiness of the findings. *See id.*

Spaulding asserts that the report should be admissible because Detective Rice observed the roadway evidence immediately after the collision. However, Detective Rice did not prepare the portion of the report that the parties have provided to the Court. Without the full report, the

---

[4] The diagrams were apparently prepared by entering measurements and data of roadway obtained by the Nikon Total Station system used by Detective Rice, into a software program that lays out points to be used in diagraming. [Record No. 43, p. 9] The Court does not have any measurements or diagrams that are purported to be part of the police report.

-11-

Court cannot determine which parts of the report contain factual findings "observed while under a legal duty to report" or "from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(ii)-(iii). This finding is particularly significant because Detective Rice is participating in the case outside of his ordinary official duties as a police officer. Additionally, the Court has no way of knowing whether Investigator Meadows, the preparer of the report, has sufficient first-hand knowledge that would render the report admissible under Rule 803(8) and *Miller*.[5] Without a complete copy of the report and sufficient information about how the entire report was prepared, the Court cannot fulfill its independent obligation to verify the trustworthiness of the findings. Therefore, the Court will grant Tate's motion.

### E.    Dr. Sexton's Opinion and Examination

Tate also seeks to exclude expert opinions from Dr. Robert Sexton. Dr. Sexton was timely disclosed as a medical expert on December 15, 2011. His original report, also disclosed December 15, 2011, did not contain opinions on the pain and consciousness of Mrs. Spaulding after the accident, but it did contain opinions on the cause of death, Mr. Spaulding's alleged injuries, and the reasonableness of medical expenses. [Record No. 29-5] On February 10, 2011, defense expert Dr. Mark Gladstein disclosed *his* opinion that: 1) Judy Spaulding had a life expectancy of 6 months or less immediately before the accident occurred; 2) Judy Spaulding did not suffer conscious pain and suffering prior to her death; 3) he disagrees with Dr. Sexton's

---

[5] Spaulding only asserts that "[a]lthough the report was signed by one of Detective Rice's officers on his reconstruction team, it was prepared together with him and he prepared the diagrams that were included with the report; further, the measurements, photographs and other information gathered and used for the preparation of the accident report[] were obtained by Detective Rice." [Record No. 43, p. 9] It is unclear whether Detective Meadows was actually on the scene of the accident and gathered the information himself.

report on Mr. Spaulding; 4) Mr. Spaulding's alleged injuries and past medical expenses may not

be related to the accident; and 5) it is unclear whether Mr. Spaulding will need future medical

care or whether he suffered any permanent injury as a result of the accident. [Record No. 29-6]

Thereafter, on March 9, 2012, Spaulding submitted supplemental rebuttal Rule 26(a)(2)

disclosures. [Record No. 29-7, p. 2] The supplemental disclosures included the following

opinions by Dr. Sexton: 1) Mrs. Spaulding experienced conscious pain and suffering before she

died; 2) Mr. Spaulding now has a permanent injury from the accident; 3) the amount of Mr.

Spaulding's past and future medical bills; and 4) the amount of money the Estate has incurred

on bills due to the accident. [Record No. 29-7] Tate argues that these disclosures are not proper

rebuttal opinions because they are new opinions submitted "under the guise of 'supplemental'

or 'rebuttal' disclosures," but are actually new opinions and are thus untimely. [Record No. 29-

1, p. 5] Additionally, Tate argues that the disclosures show that Spaulding underwent a "secret"

IME on February 21, 2012. Tate argues that the she has been prejudiced by the "failure to give

notice of any IME and to timely produce any IME reports." [Record No. 29-1, p. 6]

Dr. Sexton's opinions are proper rebuttal evidence, and they were timely disclosed.

Rebuttal experts provide testimony to "solely contradict or rebut evidence on the same subject

matter identified by [an opposing party's expert witness]." Fed. R. Civ. P. 26(a)(2)(C). Dr.

Sexton's supplemental disclosure concerned the same subject matter identified by defense expert

Dr. Mark Gladstein, and was intended to contradict or rebut evidence on the same subject matter.

Specifically, the opinions contained in the March 9, 2012 disclosures concerned Mrs.

Spaulding's consciousness and pain level before she died, an injury Spaulding alleges was

-13-

caused by the accident, and the amount and reasonableness Spaulding's medical bills.  These are all matters addressed in Dr. Gladstein's opinion.  Therefore, Dr. Sexton's supplementation of rebuttal opinions was not untimely or improper.

In addition, although Dr. Sexton entitled his report "independent medical evaluation," it is clear that Spaulding did not actually intend the report to serve as an IME under Rule 35 of the Federal Rules of Civil Procedure.  This was not "a secret independent medical examination," nor did the Court order an examination under Rule 35.  The examination was apparently conducted after a change in Mr. Spaulding's medical condition, which occurred after Dr. Sexton's initial reporting was completed.  [Record No. 43, p. 14] Spaulding contends that his medical condition has continued to change, and he properly supplemented their disclosures when this occurred.  Thus, his opinions are admissible, and the Court will deny Tate's motion to exclude Dr. Sexton's opinions.

### F.     Dr. Everman's Opinion

Tate moves to exclude the opinions of treating physician, Dr. Nicole Everman.  [Record No. 29-1, p. 9]  Tate argues that because Dr. Everman did not prepare an expert report, the following opinions should be excluded: 1) Spaulding's headaches were caused by the accident; 2) Spaulding's sensation of a bump on the head was caused by the accident; and 3) Dr. Everman's medical treatment and expenses were reasonable and necessary.  Additionally, Tate argues that Dr. Everman's testimony regarding whether any headaches are actually related to the accident is "sufficiently ambiguous to warrant exclusion."  [Record No. 29-1, p. 10] Spaulding

responds that Dr. Everman's opinions will be offered as a treating physician only, and that they are expressed to a reasonable degree of medical certainty.

Mr. Spaulding was referred to Dr. Everman, a neurologist, following the accident. [Record No. 43, p. 15-16]  She treated Mr. Spaulding three or four times for his headaches. During discovery, Spaulding disclosed Dr. Everman as a treating physician who will testify regarding his medical records, the permanence of his headaches, and the causation of his headaches.  However, Spaulding did not file an expert disclosure report for Dr. Everman. Nonetheless, on March 21, 2012, Spaulding took a videotaped evidentiary deposition of Dr. Everman, in which defense counsel participated.  [Record No. 43-7]

A witness who is "retained or specially employed to provide expert testimony in the case" must provide a written report containing certain required disclosures.  Fed. R. Civ. P. 26(a)(2)(B).  However, for witnesses who are not required to file a written report, a disclosure must simply be made in accordance with Rule 26(a)(2)(C).  A treating physician is generally exempt from the written report requirement for expert testimony to the extent that his opinions were formed during the course of treatment. *See Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007); *see also Roberts v. Solideal Tire, Inc.*, 06-14-DLB, 2007 WL 2990536, at *4 (E.D. Ky. 2007).  Further, the Advisory Committee Note to Rule 26 states that a "treating physician . . . can be deposed or called to testify at trial without any requirement for a written report." *Fielden*, 482 F.3d at 869 (alteration in original).  A treating physician is not permitted to testify to issues beyond those covered in ordinary medical training. *Id.* at 871-72.

-15-

As a treating physician, Dr. Everman was not required to comply with the disclosure requirement in Rule 26(a)(2)(B).  She was not specially retained for this litigation, and the opinions expressed are those formed during the course of Mr. Spaulding's treatment.  However, Dr. Everman cannot testify beyond her medical treatment of Mr. Spaulding.  In addition, she is not permitted to testify beyond those issues covered in ordinary medical training.  Finally, her testimony regarding causation is not sufficiently ambiguous to warrant exclusion.  During her deposition, she stated that she believes it is more likely than not that Mr. Spaulding did not have these headaches before the car accident, and expressed that opinion to a reasonable degree of medical certainty.  This meets standard of "preponderance of the evidence" for expert testimony. *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).  Therefore, Tate's motion will be denied.

### G.    State Farm's Expert Proof

Tate seeks to exclude any expert proof presented by intervening plaintiff State Farm for its failure to comply with the Scheduling Order.  Spaulding has no response to this motion; however, State Farm responds that it expects to use expert testimony and proof already developed by Spaulding.  State Farm intervened in this case on December 21, 2011, six days after the required date for expert disclosures.  It filed a witness disclosure list on January 12, 2012, stating its intent to use experts only used by any other party.  Tate was on notice of the experts that State Farm will use, because the experts had already been disclosed by Spaulding. Because it would have been impossible for State Farm to comply with the Scheduling Order, the Court will deny Tate's motion.

-16-

### H.      Evidence Regarding Mrs. Spaulding's Alleged Groan

Tate also seeks to exclude evidence of Mrs. Spaulding's "groan," asserting that it is hearsay within the meaning of Rules 801 and 802 of the Federal Rules of Evidence.  Tate also argues that it is irrelevant under Rule 402, or unduly prejudicial under Rule 403.  The Court concludes that the groan is not hearsay, as it is neither a statement nor is it offered for the truth of the matter asserted.  Additionally, the groan is relevant for the conscious pain and suffering issue, and the Court does not find that the relevance is substantially outweighed by its prejudicial effect under Rule 403.  Thus, the Court will deny Tate's motion to exclude evidence of the groan.

### I.      Commercial Violations Report

Tate seeks to exclude the commercial violations report and its contents under Rules 402 and 403.  Tate argues that the report is irrelevant.  Alternatively, she argues that it is unduly prejudicial.

After the accident, the Kentucky State Police cited Tate for three violations concerning exposed tire ply or belt material and lower rear mud flaps.  [*See* Record No. 29-9] All of the experts in the case agree that the violations documented in the commercial violations report did not contribute to or cause the accident.  [*See* Record No. 29-1, p. 11; *see also* Record No. 43, p. 19.] Indeed, Spaulding concedes that the violations did not cause the accident.  [Record No. 43, p. 19] However, Spaulding argues that evidence of the violations are relevant because they evidence a disregard for state and federal law, and "[t]hey illustrate a lack of concern for safety in the operation of Ms. Tate's trucking business."  [*Id.*]   Because both parties agree that the

violations did not contribute to or cause the accident, the Court finds that they are not relevant to Spaulding's claim of negligence. Even if there was some probative value to the violations, it would be substantially outweighed by the danger of undue prejudice under Rule 403. Allowing evidence of these violations would tend to suggest a decision on an improper basis. *See Mendez-Ortiz*, 810 F.2d at 79. Therefore, the Court will grant Tate's motion to exclude the report and its contents.

## J. Drug and Alcohol Testing

Tate seeks to exclude the evidence her failure to submit to drug and alcohol testing after the accident. Tate argues that there is no evidence that drugs or alcohol contributed to or caused the accident, nor was there any suspicion that she was under the influence at the time of the accident. Spaulding contends that this "further evidences Ms. Tate's disregard for law and safety." [Record No. 43, p. 20] Because no evidence has been presented that Tate was drinking or using drugs at the time of the accident, the Court will grant Tate's motion.

## K. Photographs of Monica Tate

Tate seeks to exclude photographs of Monica Tate taken several months after the accident during an inspection of her truck in Nashville, Tennessee.[6] [Record No. 29-10] These photographs depict a cooler in the front passenger seat of the truck, as well as objects on the floor of her tractor-trailer on the left side. [*See* Record No. 43-11] Spaulding argues that the photographs "present hard, objective evidence of the danger that [Tate] poses on the roadway as an operator of a commercial motor vehicle." [Record No. 43, p. 20] Spaulding further argues

---

[6] The photographs were taken as part of defense expert Vince Sayre's discovery process.

that the photographs should be admitted under Rule 406 as evidence of Tate's alleged habit of driving unsafely.

Rule 406 provides that "evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Fed. R. Evid. 406. Habit has been defined as a person's regular practice of meeting a particular kind of situation with a specific type of conduct, or as a reflex behavior in a specific set of circumstances.

The photographs in question which were taken months after the accident fail to show that Tate has a habit of driving with the cooler or other items in the front of the truck because they only document the condition of Tate's truck on a single day. Spaulding has offered no evidence that Tate habitually drives her truck with those items in the front seat. Without evidence of habit, these photographs have no probative value. And any relevance to the issue of negligence is tenuous at best. Further, there is a substantial danger of confusion of the issues or misleading the jury under Rule 403. As a result, the Court will grant Tate's motion to exclude the photographs of Tate taken during the inspection.

## IV.

Spaulding seeks to exclude various potential evidence, including: (i) testimony of witness Tamara Ledford; (ii) testimony of experts Vince Sayre and Brent Slone; (iii) evidence of collateral source; (iv) evidence concerning Mr. Spaulding's prior marriages; (v) evidence concerning Mr. Spaulding's son; and (vi) various other general requests.[7] [Record No. 30-1]

---

[7] Spaulding has filed motions to exclude various general categories of evidence, (*i.e.* seeking to exclude *ad hominem* attacks on plaintiff's counsel), even where Tate has explicitly stated that she has no

## A.      Testimony of Eyewitness Tamara Ledford

Spaulding moves to exclude the testimony of eyewitness Tamara Ledford because "she did not witness the impact at the heart of this case." [Record No. 30-1, p. 1]  Spaulding argues that testimony from Ms. Ledford should be excluded under as either irrelevant, cumulative, or unduly prejudicial under Rules 401 and 403.  Tate responds that the testimony is relevant because she witnessed the Spauldings' vehicle cross the center line.

Ms. Ledford gave a sworn statement on January 19, 2012. [Record No. 40-2]  She stated that she was traveling behind the Spauldings the day of the accident and saw the Spauldings' vehicle cross the center line to the left and then overcorrect at a high speed and in an out-of-control manner.  [*Id.*, pp. 16-17]  She further commented that she did not see Tate's tractor-trailer cross the center line and impact the Spauldings' car.  [*Id.*, p. 18]  Spaulding argues that Ms. Ledford's statements are irrelevant because she did not witness the impact itself.

Spaulding's argument is unconvincing.  Ms. Ledford's testimony contains evidence of the occurrences surrounding the alleged impact.  As Tate points out, whether Ms. Ledford witnessed all of the accident or just part of it is a proper matter for cross-examination.  However, Ms. Ledford's testimony is "of consequence" to the determination of which car departed its proper lane, as well as the scene prior to and directly after the accident.  Thus, her testimony potentially has high probative value.  In addition, the Court does not find that the high probative value is substantially outweighed by undue prejudice or the presentation of needlessly

---

intention of introducing such evidence.  Because there is little likelihood that these general categories of evidence or testimony would be introduced at trial, the Court will deny these general motions as moot. However, if there are circumstances where the motion is opposed, and Tate seeks to introduce improper evidence falling into one of the general categories, the Court will grant the motion.

cumulative evidence.  Rule 403 does not require exclusion of evidence solely because of its damaging effect on a party's case.  *See Bonds*, 12 F.3d at 567   Therefore, the Court will deny Spaulding's motion regarding Ms. Ledford's testimony.

### B.     Testimony of Defense Experts Vincent Sayre and Brent Slone

Spaulding next argues that the testimony of defense experts Vincent Sayre and Brent Slone should be excluded because an animation they prepared was not provided to opposing counsel.  Spaulding attempts to exclude *any* testimony from either expert as a result of this failure.  Tate responds that she has produced the only animation that may be used as an exhibit or demonstrative proof at the trial of this matter.  The Court has not been provided with this animation, which purportedly shows the viewpoint of Ms. Ledford during the accident.  However, the Court accepts Tate's assertions that this animation was not provided because it will not be introduced at trial.  [Record No. 40-1, p. 5]  As a result, the Court will grant Spaulding's motion to exclude that particular animation only, and will deny the motion insofar as it sought the exclusion of all testimony from Mr. Sayre and Mr. Slone.

### C.     No-Fault Benefits

Spaulding moves to exclude any evidence concerning Spaulding's receipt of no-fault benefits from his insurer as a result of the accident.  Tate concedes "that evidence of no-fault benefits is generally not admissible," but asks the Court to "note that there should be a set-off from any verdict which may be awarded to the Plaintiff[s] for amounts which represent the Basis Reparation Benefits paid, or payable, to Plaintiff[s]."  [Record No. 40-1, p. 6]

The Court finds that evidence concerning Spaulding's receipt of no-fault benefits from his insurer is inadmissible. *See Drury v. Spaulding*, 812 S.W.2d 713, 716-17 (Ky. 1991) (finding error where the jury was informed that the plaintiff cannot recover a portion of her medical expenses or lost wages because of the receipt of no-fault benefits). However, any verdict against Tate which awards Spaulding amounts which would have been paid or payable by Basic Reparations Benefits ("BRB") would entitle Tate to a setoff from the verdict for the amount of such benefits which were paid or payable to Spaulding.[8] *See Carta v. Dale*, 718 S.W.2d 126, 128 (Ky. 1986). Noting the requirement of a set-off in the event of a recovery to prevent double-recovery, the Court will grant Spaulding's motion.

> **D.    Evidence Regarding Mr. Spaulding's Prior Marriages and Mr. Spaulding's Son**

Spaulding seeks the exclusion of evidence regarding Mr. Spaulding's prior marriages and evidence concerning Mr. Spaulding's son as irrelevant and prejudicial. In response, Tate states that he does not intend to introduce such evidence, but that "it is unknown to what context the Plaintiff[s] refer." [Record No. 40-1, p. 7] Tate argues that, because Mr. Spaulding is pursuing a loss of spousal consortium claim, she should be allowed to proffer evidence of other consortium-giving relationships following the death of Mrs. Spaulding.

Evidence of Mr. Spaulding's consortium-giving relationships after the death of his wife *may* be relevant to his loss of consortium claim. *See Miller ex. Rel. Monticello Baking Co. v. Marymount Med. Ctr.*, 125 S.W.3d 274, 285 (Ky. 2004) (where the Kentucky Supreme Court stated that evidence of a live-in girlfriend is relevant to a claim for loss of consortium). In

---

[8] Intervening party State Farm has already paid BRB benefits to Spaulding.

addition, the Court recognizes that there may be some context in which Mr. Spaulding's relationship with his son would be relevant to his claim of loss of consortium. However, evidence regarding Mr. Spaulding's previous marriages will be excluded as irrelevant. Therefore, the Court will grant Spaulding's motion regarding this category of evidence, in part.

### E.    Collateral Source Evidence

Spaulding next attempts to exclude evidence of collateral source payments and payments or benefits available to Spaulding, such as insurance, public assistance, social security payments and Medicare/Medicaid. Tate acknowledges "that the collateral source rule is an evidentiary rule that prohibits the admission of evidence that a claimants' damages were or will be compensated from some other source than the damages awarded against the defendant" and states her "intention to comply with the rule of collateral source evidence and the other Rules of Evidence." [Record No. 40-1, p. 5] Therefore, Spaulding's motion will be granted.

### F.    General Motions to Exclude

Spaulding next requests to exclude the following general evidence: (i) lawyer advertisements; (ii) lawyer's compensation; (iii) unjust enrichment; (iv) any literature or text not disclosed in discovery or prior to trial; (v) the effect of a verdict on insurance rates or premiums; (vi) allocation of fault to non-party individuals; and (vii) tax liability. Tate responds to each of these motions, and indicates that she has no intention of referencing or introducing any of these matters at trial. If any improper statement or evidence is offered at trial, the Court will rule according to the Federal Rules of Evidence on a case-by-case basis, and in the context for which

it was offered.  Because these motions are unnecessary at this point, the Court will deny these general motions to exclude as moot.

> ### G.    Reference to Financial Implications on Defendant

Spaulding seeks to exclude references to the financial implications a verdict might have upon Tate.  Tate does not oppose this motion, and instead suggests that neither party should reference Tate's financial condition or Tate's ability/inability to pay a judgment.  The parties' respective financial conditions are not relevant to the issues that will be presented to the jury.  Accordingly, Spaulding's motion to exclude reference to the financial implications a verdict might have upon Tate will be granted.

> ### H.    Character References Regarding Counsel; References to Counsel; Appealing to Juror Prejudice Against the Civil Justice System; and Ad Hominem Person Attacks.

Spaulding also requests a number of exclusions regarding what opposing counsel should not be able to mention.  [*See* Record No. 30-1 ¶¶ 16, 17,  21, 22]  These include attempts to exclude: (i) character references about counsel; (ii) any mention of counsel's parents or their family members' occupation, religion, experience, or activities; (iii) improper statements about the compensation to counsel; (iv) indictments of the American civil justice system; and (v) *ad hominem* attacks on counsel.  Certainly, much of the matters covered in these motions would be irrelevant and/or improper if offered during trial.  However, there is no indication at this time that Tate intends to offer evidence, statements or arguments concerning these matters.  Therefore, the Court will deny this request as moot.

> ### I.    Settlement Discussions

-24-

Spaulding seeks the exclusion of "[a]ny mention, either direct or indirect, including the exchange of documents, relating to any settlement discussions and/or agreements that might have taken place or should have taken place, or any mention of any claim that was made in correspondence, which is in the nature of settlement discussion and/or agreements." [Record No. 30-1, p. 7] Evidence of settlement offers and negotiations by either party are inadmissible unless one of the limited exceptions is met.  Fed. R. Evid. 408.  Thus, the Court will grant Tate's motion.

### J.        References to Mrs. Spaulding's Negligence

Spaulding attempts to preclude "any direct or indirect attempts, references, or implications that Mrs. Judy Spaulding was contributory, negligent, or did anything accidently, negligently, or intentionally that may have caused her injuries or death in this matter." [Record No. 30-1, p. 8]  Spaulding argues that there is no evidence that she did anything to cause her injuries or death, and that arguing "comparative fault without any such evidence is merely speculative and would only serve to confuse the jury, is not relevant, and should not be permitted" under Rules 401 and 402.  [*Id.*]  Because there is no evidence that Mrs. Spaulding was negligent, the Court will grant Spaulding's motion.

### K.        Juror Sympathy

Finally, Spaulding seeks to preclude Tate from telling that the jury not to consider sympathy.  Specifically, Spaulding asks the Court to "preclude Defendants from stating that the jury may not consider sympathy."  [Record No. 30-1, p. 8]  Spaulding argues that the defense "often attempts to insulate a jury from the natural human emotions that are part and parcel to the

decision of any case." [*Id.*]  Tate responds that "there is no rule of evidence precluding counsel from asking the jury to put aside its passion, prejudice or sympathy, and to base its decision on the evidence of record."  [Record No. 40-2, p. 11]

Spaulding's request is inappropriate.  In all cases, the Court is expected to ensure that a case is decided on the evidence of record, and not for any improper reason, such as bias, sympathy, or prejudice.  *See Board of Cnty. Road Comm'rs of Wayne Cnty. V. GLS LeasCo, Inc.,* 229 N.W.2d 797, 800 (Mich. 1975) (While a lawyer is expected to advocate his client's cause vigorously, parties are entitled to a fair trial on the merits of the case, uninfluenced by appeals to passion or prejudice).[9]  Tate is well within her rights to ask the jury to put aside their sympathy and decide the case on the merits and the evidence presented at trial.  Thus, Spaulding's motion will be denied.

## V.

For the reasons explained above, it is hereby **ORDERED** as follows:

(1)       Defendant Monica Tate's motions *in limine* [Record No. 29] are **GRANTED**, in part.  The following evidence is excluded: the testimony of Detective Rice on the issue of fault; the commercial violations report; evidence regarding the lack of drug and alcohol testing; the police report; and the photographs of Tate taken in the course of discovery.

(2)       Plaintiff Edward L. Spaulding's first motions *in limine* [Record No. 30] are **GRANTED**, in part.  The following evidence is excluded: references to Mr. Spaulding's prior

---

[9] In criminal cases, juries are specifically instructed that they should not let "bias, sympathy, or prejudice that [they] may feel toward one side or the other influence [their] decision in any way." *See* Sixth Circuit Pattern Instruction No. 1.02.

marriages; receipt of no-fault benefits; references to financial implications of a verdict; settlement discussions; and testimony placing fault on Mrs. Spaulding.

(3)     Plaintiff Edward L. Spaulding's second motion *in limine* to strike and exclude testimony of Dr. Gladstein [Record No. 31] is **DENIED**.

(4)     Defendant Monica Tate's supplemental motion *in limine* to exclude Detective Rice's testimony for failure to comply with Rule 26(a)(2)(b) [Record No. 32] is **DENIED**.

This 2nd day of October, 2012.

Signed By:

*Danny C. Reeves* DCR

United States District Judge